# EXHIBIT 2

# EXHIBIT 2

F I L E D
Electronically
CV17-00360
2017-02-21 11:25:21 AM
Jacqueline Bryant
Clerk of the Court
Transaction # 5958775 : csulezic

Code: 1670
PAUL J. ANDERSON, ESQ.
Nevada Bar No. 709
PROCTER J. HUG, IV, ESQ.
Nevada Bar No. 12403
MAUPIN, COX & LeGOY
4785 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 827-2000
Facsimile: (775) 827-2185
*Attorneys for Plaintiff*

IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF WASHOE

| | |
|---|---|
| BAKKEN RESOURCES, INC., a Nevada corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLAN G. HOLMS, an individual, MANUEL GRAIWER, and individual, DOES 1-10 and ROE ENTITIES I-X,<br><br>Defendants. | Case No.:<br><br>Dept. No.: |

### PLAINTIFF BAKKEN RESOURCES, INC.'S EX PARTE MOTION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR HEARING ON PRELIMINARY INJUNCTION

Plaintiff, BAKKEN RESOURCES, INC., a Nevada Corporation ("BRI," "the Company," or "Plaintiff"), submits the following Ex Parte Motion and Application for Temporary Restraining Order and Request for Hearing on Preliminary Injunction pursuant to Rule 65 of the Nevada Rules of Civil Procedure, as well as NRS 33.010.



MAUPIN COX LEGOY
ATTORNEYS AT LAW
P.O. Box 30000
Reno, Nevada 89520

This Motion is based on the following:

A. The Verified Complaint filed concurrently with this Motion;

B. The Memorandum of Points and Authorities attached hereto;

C. The various documents attached as Exhibits "1," through "15," to the Verified Complaint; and

D. All of the records, documents, papers and pleadings on file or to be filed in the above-entitled matter, arguments of counsel, and any other matter that may properly come before the Court for its consideration of this Motion.

Dated this 21st day of February, 2017.

Maupin, Cox & LeGoy

By: _____
Paul J. Anderson
Nevada State Bar No. 709
Procter J. Hug, IV, Esq.
Nevada State Bar No. 12403
4785 Caughlin Parkway
Reno, NV 89519
Tel.: (775) 827-2000
Fax: (775) 827-2185
*Attorneys for Plaintiff*

MAUPIN COX LEGOY
ATTORNEYS AT LAW
P.O. Box 30000
Reno, Nevada 89520

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff, above named, submits the following Memorandum of Points and Authorities in support of its Ex Parte Motion for Temporary Restraining Order.

## I.

## STATEMENT OF FACTS PERTINENT TO MOTION

Concurrently with the filing of this Motion, BRI has filed a Verified Complaint seeking, among other things, injunctive relief, against Defendant Allan G. Holms only. The Verified Complaint, together with all of the exhibits attached thereto, are incorporated herein by reference with respect to the factual allegations. Mr. Holms is an individual who is believed to be a resident of the State of Washington and who personally holds a small percentage of shares of the common stock of BRI. Throughout this Motion Defendant Allan G. Holms shall be referred to as "Allan," "Allan Holms," or "Defendant."[1]

As set forth in the Verified Complaint, Allan has engaged in various forms of illegal and questionable conduct since approximately late June or early July, 2016, designed to obtain control of BRI. Initially Allan obtained proxies from his now deceased brother, Val Holms ("Val"), Manuel Graiwer, one of the Derivative Plaintiffs who is also a named Defendant in this case ("Graiwer"), and another twenty-two shareholders of BRI which he subsequently attempted to use to obtain control of BRI. Those attempts ultimately proved unsuccessful as a Temporary Restraining Order was entered by a District Court in Helena, Montana on July 22, 2016, prohibiting Allan from taking such actions to obtain control of BRI, and related matters.

---

[1] There is a need for the multiple designations pertaining to Allan Holms since there are references in the Verified Complaint and in this Motion to other individuals with the same last name including Allan's half-brother Val Holms, Deceased, who is a party in the consolidated derivative and injunction actions, Case No. CV14-00544 and CV-16-01086, and Val's widow, Mari Holms.

Verified Complaint, ¶ 24. Despite the TRO entered by the Montana Court, Allan has continued to attempt to obtain control of the Company through various means. His tactic of claiming majority control through the proxies recently changed after the proxies expired on January 6, 2017, or were otherwise withdrawn by the shareholder providing the proxy.

On December 24, 2016, Val died at his residence located in Polson, Lake County, Montana. Verified Complaint, ¶ 43. At the time of his death Val continued to own BRI common stock evidenced by certificates 335, 1342, 1343, 1344 and 1345, which totaled twenty-six million two hundred thirty-five thousand (26,235,000) shares of BRI common stock. Those shares comprise approximately forty-seven percent (47%) of the common shares of BRI.

Allan now claims Val transferred, or at least attempted to transfer, all of his shares of common stock to Allan on December 10, 2016, through various documents including stock powers and assignments Allan claims Val personally executed, but which recently were determined by Mark Songer, a Forensic Document Examiner retained by the Company, to not be consistent with known samples of actual signatures belonging to Val and that certain signatures purportedly signed by Val were not, in fact, signed by Val. Verified Complaint, ¶ 73, and Exhibit "11." Allan attempted to present those documents to Nevada Agency and Transfer Company ("NATCO"), in Reno, Nevada initially through inquiries by an individual by the name of Don Walford on January 31, 2017, and thereafter through Allan's own efforts beginning on or around February 7, 2017. All of Allan's attempts to transfer Val's shares have been refused to date by NATCO due to Allan not having in his possession the appropriate documentation to effectuate a transfer without being in possession of the original shares.

Through the several conversations Allan has had with NATCO he has consistently been told there are five (5) items he must produce before NATCO can issue new stock certificates

4



since Allan is not in possession of the original certificates. These include: (a) a copy of Val Holms' Death Certificate; (b) Letters Testamentary which confirm the appointment of the authorized representative of Val's Estate; (c) a stock power signed by the authorized representative of Val's Estate with the signature Medallion guaranteed and confirming the Medallion limit exceeds the value of the shares; (d) a Lost Instrument Bond in an open penalty amount naming NATCO and BRI as obligees; and (e) an Affidavit of Loss executed by the authorized representative of Val's Estate. See, Exhibit "C," attached to Exhibit "5," of the Verified Complaint, affidavit of Amanda Cardinalli, President of NATCO.

Additionally, Allan has made attempts to create the false impression that he is in control of the Company through the filing of two documents with the Securities Exchange Commission ("SEC"), including a Form 5, and a Schedule 13D. Verified Complaint, ¶ 61 through 72. The Form 5 is an "initial statement of beneficial ownership" that must be filed whenever an executive officer or director comes aboard a publicly traded company, or when a shareholder acquires more than ten percent (10%) of the equity securities of a public company. Allan's Form 5 was provided to the Company by his securities counsel in Spokane, Washington, Richard Repp, Esq., of the law firm of Witherspoon Kelley Davenport, and contains false information such as statements that Allan is President of the Company as well as a Director. See, Exhibit "8," attached to the Verified Complaint. The Form 5 further indicates Val purportedly transferred half of his shares[2] to Allan by virtue of a "representation agreement" dated August 1, 2016. This is inconsistent with Allan's statements to NATCO on February 7, 2017, where he claimed the VH Shares were transferred to him by Val on December 10, 2016. It is also inconsistent with

---

[2] The 26,235,000 shares of BRI stock owned by Val are referred to as the VH Shares in the Verified Complaint and will be referred to as such in this Motion.

5



Allan's actions in the Montana litigation where he continues to claim to hold Val's proxy executed on July 7, 2016. There were two hearings held by the District Court in Montana in which Allan claimed to hold valid proxies from Val and others which gave Allan control of the Company. One such hearing occurred on August 9, 2016 and the other as recently as December 12, 2016. Assuming Val had transferred the VH shares to Allan on August 1, 2016 and December 10, 2016, as Allan claims, there was no reason for Allan to claim he held Val's proxy as the proxy would have been rendered irrelevant.

Corporate counsel for BRI, Wesley J. Paul, Esq., contacted Mr. Repp during the morning of February 14, 2017, requesting copies of the documents referenced in Allan's Form 5, and also mentioned the filing of the Form 5 appeared to violate the Montana TRO. Mr. Paul further requested that Allan withdraw the Form 5 by close of business on February 16, 2017. Mr. Repp advised Mr. Paul he was not authorized to share the documents associated with the Form 5. In the afternoon of February 14, 2017, Mr. Repp filed with the SEC a Schedule 13D, containing many of the same false disclosures as the Form 5, including Allan being President of BRI as well as a Director of the Company. See, Exhibit "9." By failing to provide the requested backup documentation to corporate counsel the Company is unable to verify the accuracy of Allan's filings. Accordingly, on February 16, 2017, Mr. Paul, as corporate counsel to BRI, filed a Current Report on Form 8-K, disputing the validity of the Form 5 and Schedule 13D filed by Allan and disavowing such filings as being part of the Company's SEC filings. See, Verified Complaint, ¶'s 62 through 73, and Exhibit "10."

As mentioned above, the Company retained a forensic handwriting expert to conduct an analysis of the signatures on the Irrevocable Stock/Bond Power Forms presented by Allan to NATCO in his attempt to effectuate transfer of the VH Shares to Allan. That expert, Mark

6


MAUPIN COX LEGOY
ATTORNEYS AT LAW
P.O. Box 30000
Reno, Nevada 89520

Songer, has concluded in his report dated February 15, 2017, that Val's signatures on those forms are not consistent with known samples of actual signatures belonging to Val and that certain signatures purportedly claimed to be signed by Val were not, in fact, signed by Val based on Mr. Songer's examination. See, Verified Complaint, ¶ 73, and attached Exhibit "11." As mentioned above, all of the allegations of the Verified Complaint are incorporated herein by reference.

## II.

## ARGUMENT

### A. Defendants are Entitled to a Temporary Restraining Order to Preserve the Status Quo

Injunctive relief is governed in Nevada by NRS 33.010 as well as the provisions of NRCP 65. The statute, NRS 33.010, reads:

> An injunction may be granted in the following cases:
>
> 1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.
>
> 2. When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.
>
> 3. When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's right respecting the subject of the action, and tending to render the judgment ineffectual.

As this Court is aware temporary restraining orders are governed by the provision of Rule 65(b) of the Nevada Rules of Civil Procedure ("NRCP"). That rule states in relevant part:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly


LAUPIN COX LEGOY
ATTORNEYS AT LAW
P.O. Box 30000
Reno, Nevada 89520

> appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reason supporting the claim that notice should not be required.

See, Friedman v. Eighth Jud. Dist. Court, 81 Nev. 131, 399 P.2d 632 (1965); and Farnow v. Dep't. 1, Eighth Jud. Dist. Court, 64 Nev. 109, 178 P.2d 371 (1947).

Here, immediate and irreparable injury, loss or damage will result to the Company if a temporary restraining order ("TRO") is not immediately entered precluding Allan, or any person or entity affiliated with Allan, from continuing to attempt to transfer the stock certificates owned by Val at the time of his death, designated as stock numbers 335, 1342, 1343, 1344 and 1345 constituting Twenty-Six Million Two Hundred Thirty-Five Thousand (26,235,000) shares of common stock of BRI. Additionally, and perhaps more importantly, a temporary restraining order is necessary to prevent Allan from continuing to file or attempting to file additional documents with the SEC which purport in any way to represent that Allan is either an officer, director, or ten percent (10%) shareholder of BRI, since none of those matters are true.

The Company will incur irreparable harm based on the filing of the Form 5 and Schedule 13D where Allan has misrepresented his status as an officer, director and over ten percent (10%) shareholder of the common stock of BRI. Because the Form 5 and Schedule 13D are public documents Allan could potentially bind the Company through contracts or other obligations with third-parties he is not authorized to contract with, but who have no reason to know Allan lacks the authority to so act. Moreover, such third parties would be justified to believe Allan has the authority to bind the Company if that person relied on the Form 5 and

Schedule 13D recently filed by Allan. Accordingly, a TRO to preserve the status quo until these issues can be heard by a court is imperative.

### B. BRI Will Suffer Immediate and Irreparable Harm if Allan's is able to Represent Himself as the President, Director and Majority Shareholder of the Company

As indicated in the Statement of Facts, all of the allegations which are set forth in the Verified Complaint, together with all of the Exhibits attached thereto, are incorporated in this Motion for Temporary Restraining Order. Allan Holms must immediately be enjoined pending a full hearing on a preliminary injunction motion from continuing with his attempts to obtain a transfer of BRI stock numbers 335, 1342, 1343, 1344 and 1345 through NATCO or any other transfer agent. The Verified Complaint establishes that Allan is relying on forged documents to effectuate the transfer of his deceased half-brother's common stock, but is refusing to provide or is unable to provide NATCO with the documentation NATCO requires to effectuate a transfer of the shares.

Moreover, Allan continues to hold himself out as the President of BRI and a Director of the Company through the filing of the Form 5 and Schedule 13D with the SEC. All of this is being done in violation of a Temporary Restraining Order that was entered on July 22, 2016 by the District Court in Helena, Montana. *See*, Verified Complaint, ¶ 24.

As explained above, Allan's conduct in continuing to act in this fashion will irreparably harm BRI because shareholders of the Company, as well as third-parties who Allan may attempt to contract with on behalf of the Company through his false representations, will justifiably rely on representations set forth in the Form 5 and Schedule 13D despite the fact those documents contain false and misleading information. Their reliance is justified because Allan's

9

representations are currently on file with the SEC, the body that regulates governance of publicly traded companies such as BRI.

The Securities Exchange Act of 1934 (the "Act"), imposes vicarious liability for securities fraud on controlling persons (principals) for the conduct of controlled actors (agents) unless the controlling persons acted in good faith and did not induce the controlled actors conduct. 15 U.S.C. § 78t. To avoid liability under this provision of the Act a controlling person must show they acted in "good faith" and did not "directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. Here, Allan is representing authority he simply does not have through the filing of the Form 5 and Schedule 13D. Such representations are made in filings that are automatically linked to the Company's SEC filings, which are public and easily found by anyone with a web browser. Therefore, anyone who wishes to find information relating to the Company will be able to see Allan's Form 5 and Schedule 13D filings, and the SEC's public filing system does not currently permit registrants, such as the Company, to remove filings once they are made. To the extent third persons rely on the false information Allan has disseminated to the public, BRI is liable for any harm such third-party suffers along with Allan. The provisions 15 U.S.C. 78t are similar to the common law doctrines of apparent authority and respondeat superior which are addressed below, and the Ninth Circuit Court of Appeals has held that liability may be imosed under Section 20 (a), 15 U.S.C. 78t, and common law.

Pursuant to the doctrine of apparent authority a principal is held liable when he makes some outward manifestation that would lead reasonable third parties to believe the principal authorized the agent to act on his behalf. *See, Kristensen v. Credit Payment Services, Inc.*, 2015 WL 447425(D.Nev. 2015). Additionally, apparent authority depends on the conduct of the

MAUPIN COX LEGOY
ATTORNEYS AT LAW
P.O. Box 30000
Reno, Nevada 89520

principal and not the conduct of the agent. See, *Peterson v. Securities Settlement Corp.*, 26 Cal. App. 3d 1445 (1991). Unless Allan is enjoined from making further filings with the SEC, the Company is at grave risk under this theory of liability because Allan's filings are all linked directly with the Company's publicly-available filings. Allan may be able to use any number of future false and misleading SEC filings in furtherance of his unlawful plan to attempt to seize control of the Company.

Moreover, while Allan has filed a Form 5 and Schedule 13D for his alleged transactions with Val, there are no corresponding filings by Val that verify or evidence these transactions. 15 U.S.C. 78m (d) (3) states that when "two or more persons act as a partnership, limited partnership, syndicate or other group for the purposes of acquiring, holding, **or disposing** of securities of an issuer, such syndicate or group shall be deemed a 'person' for purposes of this subsection." (Emphasis added). Accordingly, the same SEC rule that requires Allan to file the Schedule 13D likewise requires Val to make a similar filing. Val never made such a filing.

By representing himself as a President and Director of BRI, and filing important documents with the SEC which are relied upon by the public, as well as any and all persons doing business with BRI, Allan is in a position to cause immediate and irreparable harm to the Company. Accordingly, Allan must be enjoined until a full and complete hearing pursuant to a preliminary injunction may be conducted in this matter.

C. **The Temporary Restraining Order Should be Entered Without Notice to Allan**

In addition to showing that immediate and irreparable injury, loss or damage will result to the party seeking the temporary restraining order, NRCP 65(b) also requires a showing by the



11

applicant's counsel the efforts, if any, which have been made to give the notice and the reason supporting the claim that notice should not be required.

Here, Allan Holms has not been a party to any of the proceedings thus far pending in Department 7 before Judge Flanagan which are referenced in the Verified Complaint as the Derivative Action and the Injunction Action. He has, however, been a party to related litigation that has been ongoing in the State of Montana, as also referenced in the Verified Complaint and this Motion. His conduct which the Company is seeking to enjoin at this time is egregious, in that it is based on false information, and forged documentation. Accordingly, the Company fears that if notice is provided to Allan he may very well take extreme steps to complete the transfer of the common stock held by Val's Estate which will cause irreparable injury to BRI, and would also be harmful to Val's Estate. The Company has acquired documentation which establishes that James Madson Holms, the son of Val Holms, has been appointed the Executor of Val's Estate by the District Court in Lake County, Montana. Moreover, it appears that Val's widow, Mari, who was arrested shortly after Val's death for stealing a computer from Val's office, is working in conjunction with Allan to gain control of Val's BRI common stock, an asset of the Estate. Although BRI does not claim to be representing Val's Estate, the Court should be cognizant of all that is occurring and the levels to which Allan will go to acquire his deceased half-brothers shares of BRI common stock.

Entering a temporary restraining order for the brief fifteen (15) day period allowed by NRCP 65(b) will not be harmful to Allan because, as Judge Flanagan has already ordered in the Injunctive Action, the majority shareholder of BRI is Eagle Private Equity, an entity that holds six hundred thousand (600,000) shares of BRI Series A Preferred Stock, which has voting rights of sixty million (60,000,000) shares of common stock. Entering the TRO will preserve the status

quo and will prevent the confusion and harm that Allan has caused through filing of the Form 5 and Schedule 13D.

Finally, BRI requests the Court enter the TRO without the necessity of BRI filing a bond. As shown above, Allan's is engaging in fraudulent and illegal conduct to attempt to gain control of his deceased half-brother's common stock and is filing important documents with the SEC that contain false and misleading information that will damage BRI if his conduct is allowed to continue. Accordingly, enjoining Allan at this time will cause him no harm and the need for a bond to protect Allan is nonexistent.

### III.

### CONCLUSION

Based on the foregoing Plaintiff respectfully requests this Court enter a temporary restraining order that immediately restrains Allan Holms, or any person or entity purported to be working with or affiliated with Allan Holms, from transferring or attempting to transfer any shares evidence by BRI stock number 335, 1342, 1343, 1344 and 1345 through NATCO or any other transfer agent. Moreover, NATCO and any other transfer agent should be precluded from carrying out any instructions from Allan Holms or any person, or entity purported to be working with or affiliated with Allan Holms to transfer any shares evidenced by BRI stock numbers 335, 1342, 1343, 1344 and 1345. Finally, the TRO should restrain Allan Holms from filing or attempting to file any additional documentation with the SEC that purports, indicates or in any way claims that Allan Holms is an officer, director or ten percent (10%) shareholder of BRI.

///

///

///

13

## NRS 239B.030 Affirmation

Pursuant to NRS 239B.030, the undersigned hereby affirms that this document does not contain the Social Security Number of any person.

Dated this 25st day of February, 2017.

                              Maupin, Cox & LeGoy

                              By: _____
                              Paul J. Anderson, NSB # 709
                              Procter J. Hug, IV, Esq., NSB #12403
                              4785 Caughlin Parkway
                              Reno, NV 89519
                              Tel.: (775) 827-2000
                              Fax: (775) 827-2185
                              *Attorneys for Plaintiff*